JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CHRISTINE P.,[1]<br><br>    Plaintiff,<br>    v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,[2]<br><br>    Defendant. | Case No. 2:24-cv-09340-BFM<br><br>**MEMORANDUM OPINION AND ORDER** |

This case is before the Court for review of Social Security Administration's decision denying Plaintiff's applications for Social Security benefits. For the reasons discussed below, Plaintiff's request for remand (ECF 13) is granted and the decision of the Commissioner is reversed.

---

[1] In the interest of privacy, this Report and Recommendation uses only the first name and middle and last initials of the non-governmental party in this case.

[2] Frank Bisignano became the Commissioner of Social Security in May 2025 and is substituted as Defendant here pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## I.     PROCEDURAL HISTORY

On January 7, 2022, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, alleging that she became disabled on October 6, 2020. (Administrative Record ("AR") 994-1002, 1011.)[3] Plaintiff's application was denied at the initial level of review and upon reconsideration, after which Plaintiff requested a hearing before an Administrative Law Judge. (AR 895-99, 911-19.)

On September 20, 2023, the ALJ held a hearing and heard from Plaintiff and a vocational expert. (AR 36-60.) The ALJ issued an unfavorable decision on November 24, 2023, finding that Plaintiff was not disabled. (AR 15-35.) The ALJ found at Step Two of the disability analysis[4] that Plaintiff had the severe impairments of: bilateral temporomandibular joints (TMJ) disorder; hearing loss on the left side; bruxism; vertigo; turbinate hypertrophy, status post turbinate reduction; tinnitus; bipolar disorder; anxiety disorder; and depression/affective psychosis. (AR 21.) At Step Three, the ALJ concluded that Plaintiff's conditions do not meet or medically equal the severity of any impairment contained in the regulation's Listing of Impairments—impairments that the Social Security Administration has deemed so severe as to preclude all substantial gainful activity and require a grant of disability benefits. (AR 21-23); *see* 20 C.F.R. pt. 404, subpt. P, app. 1.

Because Plaintiff's impairments were not severe enough to require an outright grant of benefits at Step Three, the ALJ proceeded to consider at Step Four whether Plaintiff's residual functional capacity ("RFC")—defined as what

---

[3] Plaintiff amended her alleged onset date from September 1, 2020, to October 6, 2020. (AR 1011.)

[4] A five-step evaluation process governs whether a plaintiff is disabled. 20 C.F.R. §§ 404.1520(a)-(g)(1), 416.920(a)-(g)(1). The ALJ, properly, conducted the full five-step analysis, but only the steps relevant to the issue raised in the Complaint are discussed here.

Plaintiff can do despite her limitations—is such that she would be able to work. (AR 24.) The ALJ found that Plaintiff could perform medium work with certain limitations: she could lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently; could stand and walk for six hours in an eight-hour workday; could sit for six hours in an eight-hour workday; could handle no more than moderate noise level; could frequently climb ladders, ropes, and scaffolds and have frequent exposure to hazards such as dangerous moving machinery and unprotected heights; would be limited to performing simple, routine work with occasional public contact; and would be absent from work once a month. (AR 24.)

The ALJ found that Plaintiff was unable to perform any past relevant work. (AR 28-29.) She was an individual "closely approaching advanced age" as of the amended alleged onset date and date last insured and had at least a high school education. (AR 29.) The ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including: Cleaner, Window (DOT No. 389.687-014, medium work, unskilled, SVP 2, with 111,400 jobs nationally); Waxer, Floor (DOT No. 381.687-034, medium work, unskilled, SVP 2, with 110,800 jobs nationally); and Cleaner, Wall (DOT No. 381.687-026, medium work, unskilled, SVP 2, with 110,400 jobs nationally). (AR 29-30.) The ALJ therefore found Plaintiff was not disabled and denied her claim. (AR 30-31.) The Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Social Security Administration. (AR 1-7.)

Dissatisfied with the Social Security Administration's resolution of her claim, Plaintiff filed a Complaint seeking review in this Court. (ECF 1.) The parties consented to proceed before a Magistrate Judge and the case was assigned to the undersigned for all purposes. (ECF 9.) The case has been fully

briefed. (ECF 13, 20.) For the reasons set forth below, the Court reverses the Commissioner's decision and remands this action.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to deny benefits to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence . . . is 'more than a mere scintilla.' It means—and only means—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal quotation marks and citation omitted). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 710 (9th Cir. 1998).

## III. DISCUSSION

Plaintiff raises two issues: (1) whether the ALJ appropriately articulated clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptoms and limitations testimony regarding her vertigo; and (2) whether the ALJ's RFC finding related to Plaintiff's vertigo was supported by substantial evidence. (ECF 13 ("Pl. Brief") at 4-16.) The Court concludes that remand is warranted on the first issue and thus declines to reach the second issue.

4

### A. Subjective Symptoms and Limitation Testimony

Plaintiff argues that the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for discounting her testimony regarding her vertigo. (Pl. Brief at 4-13.) After review, the Court agrees and thus reverses.

#### 1. Legal Framework

Where a claimant testifies about subjective medical symptoms, an ALJ must evaluate such testimony in two steps. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could "reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation and quotation marks omitted).

If the claimant meets that first standard and there is no evidence of malingering, the ALJ can reject the claimant's testimony only by offering "specific, clear and convincing reasons for doing so." *Id.* (citation and internal quotation marks omitted). An ALJ "is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to the Social Security Act." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (citation and internal quotation marks omitted). At the same time, when an ALJ rejects a claimant's testimony, she must "specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record," to support that determination. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015). General or implicit findings of credibility will not suffice; the ALJ must show the work. *Smartt*, 53 F.4th at 499; *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014).

The sufficiency of the ALJ's explanation should be judged in light of its purpose—ensuring that this Court's review is "meaningful." *Brown-Hunter*, 806

1  F.3d at 489. That is, the explanation must be "'sufficiently specific to allow a
2  reviewing court to conclude the adjudicator rejected the claimant's testimony on
3  permissible grounds and did not arbitrarily discredit a claimant's testimony
4  regarding pain.'" *Id.* at 493 (citation omitted). A "reviewing court should not be
5  forced to speculate as to the grounds for an adjudicator's rejection of a claimant's
6  allegations of disabling pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th
7  Cir. 1991).

### 2. Plaintiff's Testimony

Regarding her vertigo, Plaintiff testified that she gets vertigo "as many as a few times a month." (AR 48.) She said that her dizziness episodes sometimes lasted for a couple hours, but usually longer, sometimes lasted between one and four days. (AR 47-48.) Plaintiff testified that that when she felt dizzy, she would not be able to carry or lift anything. (AR 48.) Her vertigo impacts her ability to stand and causes her to fall a lot. (AR 50.)

### 3. The ALJ's Decision

The ALJ acknowledged that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," meeting the standard at the first step of the analysis. (AR 24.) At the second step, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 24.)

The ALJ's reasons for these conclusions were unclear. The ALJ did not describe Plaintiff's testimony, except to say that she was "fully cognizant of the fact that [Plaintiff] alleges greater limitations than allowed for" in the RFC, including "problems standing, balancing, and hearing." (AR 24.) After setting out a summary of various medical and mental health records and medical opinions, the ALJ concluded that "overall," Plaintiff's allegations were "less than fully consistent with the record as a whole," such that Plaintiff could perform

6

medium exertional work. (AR 27.) That conclusion is followed by two paragraphs: one that relates to the treatment Plaintiff received for all her various impairments; the second relates to Plaintiff's activities of daily life. (AR 27-28.)

The ALJ's explanation is inadequate. An ALJ is required to "identify the testimony she or he finds not to be credible, and must *explain* what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (emphasis added). Here, however, the ALJ merely summarized the medical records, and concluded that Plaintiff's allegations were not fully consistent with them. In doing so, the ALJ nearly replicated the explanation found to be inadequate in *Brown-Hunter*, 806 F.3d at 494 (criticizing ALJ for doing nothing more than stating her conclusion concerning the claimant's credibility and then summarizing the medical evidence that supported her RFC determination). The same can be said for the paragraphs concerning activities of daily life and treatment regime: the ALJ lumped all of Plaintiff's physical and mental-health conditions together, concluded that Plaintiff's testimony was undermined, but did not explain how any particular evidence undercuts Plaintiff's testimony concerning her vertigo. The Court is not supposed to speculate about why a claimant's testimony has been rejected, and the ALJ's explanation leaves it in precisely that position. The failure to explain, alone, warrants remand.

*Brown-Hunter* also makes clear that courts err when they undertake the ALJ's duty to try to link particular testimony to specific evidence that the ALJ might have found to undermine it. *Id.* at 494 (ALJ's "error could not be corrected by the district court's statement of links between claimant testimony and certain medical evidence."). But even if the Court could do so, the ALJ's apparent reasoning here is not persuasive. Giving the ALJ every benefit of the doubt, the decision mentions three possible reasons for discounting Plaintiff's

7

testimony concerning her vertigo: (1) her testimony was inconsistent with the objective medical evidence; (2) Plaintiff's testimony was undermined by her conservative treatment; and (3) Plaintiff's testimony was inconsistent with her daily activities. (AR 24, 27, 28.) None of these, on the facts of this case, is a specific, clear and convincing reason for rejecting Plaintiff's testimony.

First, the ALJ found that Plaintiff's testimony was not fully consistent with the medical evidence in the record. (AR 24.) The lack of supporting medical evidence cannot form the sole basis for discounting testimony, but it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) ("In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.").

In discussing the objective medical evidence related to Plaintiff's vertigo, the ALJ acknowledged that Plaintiff had issues with dizziness and balancing beginning in February 2021, corresponding to the onset of hearing loss in her left ear. (AR 24 (citing AR 1187).) The ALJ noted, however, that in May 2021, Plaintiff "displayed intact motor and sensory functioning." (AR 24 (citing AR 1202).) In November 2021, Plaintiff was observed to have a "normal gait, except when going from sitting to standing with a slight loss of balance, with the claimant considered independent for ADLs/Self Care and Transfers." (AR 24 (citing AR 1187).) Moreover, in May 2022, Plaintiff was noted to "not use a cane or walker for ambulation." (AR 24 (citing AR 1385).)

None of these records undercut Plaintiff's testimony. Plaintiff testified that her condition was episodic. At most, these records reflect that Plaintiff did not have vertigo symptoms on the three dates reported in those medical records. That Plaintiff was not suffering from an episode of vertigo during her visit to the doctor's office does not mean that she did not suffer such episodes. Certainly,

that is not what her doctors took from observing her condition; they prescribed medication and exercises to address that condition, even though it was not on display at the time of the appointment. (*See, e.g.*, AR 1188 (discussing treatment plan for Plaintiff's vertigo).) In any event, the absence of medical records positively reflecting a particular symptom cannot be the sole basis for discounting a claimant's testimony with respect to that symptom. *Burch*, 400 F.3d at 681. As such, the ALJ was required to articulate additional reasons for discounting Plaintiff's testimony.

Second, the ALJ appeared to have discounted Plaintiff's symptoms testimony based upon conservative treatment. (*See* AR 27.) An ALJ may consider a claimant's course of treatment in evaluating a claimant's subjective complaints. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding evidence of conservative treatment sufficient to discount claimant's testimony regarding severity of impairment); *see also* 20 C.F.R. § 404.1529(c)(3)(iv), (v) (medication effectiveness and treatment history are relevant factors for evaluating a claimant's symptom testimony). The fact that a claimant fails to pursue aggressive treatment options sometimes signals that either the doctor or the patient does not see the problem as one that is worthy of more aggressive treatments; other times, it reflects the fact that there is no non-conservative treatment for a particular impairment, or that even aggressive treatment options would not meaningfully improve the condition or its symptoms. A social security claimant "cannot be discredited for failing to pursue non-conservative treatment options where none exist." *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010). Because "conservative" treatment is prone to such ambiguity, courts have declined to accept an ALJ's reliance on routine or conservative treatment as a basis for rejecting a claimant's testimony "absent discussion of the additional, more aggressive treatment options the ALJ believes are available." *Tiffany M. P. v. Comm'r of Soc. Sec.*, No.

9

EDCV1800933MWFRAO, 2019 WL 3215856, at *2 (C.D. Cal. July 17, 2019) (quoting *Moon v. Colvin*, 139 F. Supp. 3d 1211, 1220 (D. Or. 2015)).

Here, the ALJ discussed the treatment Plaintiff received for all her physical and mental-health conditions in a single paragraph. (AR 27.) With respect to her physical conditions, the ALJ pointed out that Plaintiff's doctors had "no overarching treatment plan," nor did they find that Plaintiff needed "any specific treatment, aside from managed medication, for her impairments." (AR 27.) The ALJ noted that Plaintiff had not received "pain relief injections," apart from steroid injections in connection with hearing, nor had she received surgical intervention, aside from the turbinate reduction procedure in February 2022." The ALJ thus concluded that Plaintiff's "limited treatment record suggests that she is not as limited as alleged." (AR 27.)

As discussed above, the failure to discuss Plaintiff's individual conditions and its impact on specific testimony leaves this Court guessing as to whether the ALJ concluded that Plaintiff's *vertigo* was conservatively treatable. Plaintiff's vertigo is not related to pain management, nor did any doctor suggest there was a surgical fix to it. As far as the Court can tell, there is no indication in the record that any medical professional believed there was a course of treatment for her vertigo itself available apart from medication, which Plaintiff used with (apparently) limited success.

Beyond that, it appears Plaintiff's vertigo was connected to her sudden hearing loss in one ear. With respect to that condition, Plaintiff was diagnosed with "idiopathic" hearing loss—idiopathic meaning a condition for which the cause is unknown. (AR 1164.) She was treated by a specialist, received the steroid injections that the ALJ mentioned, and her hearing did not improve. None of Plaintiff's doctors discuss any other treatment that would have restored her hearing (and by doing so, possibly resolved her vertigo). In the absence of some specific treatment option that was available and that Plaintiff declined to

10

follow, the Court does not believe that the ALJ's reference to conservative treatment is a specific, clear and convincing reason to discount her testimony concerning her vertigo. *See Tiffany M.P.*, 2019 WL 3215856, at *2.

In resisting that conclusion, Defendant argues Plaintiff does not cite evidence suggesting that her vertigo treatment was anything beyond conservative. (ECF 20 ("Opp'n") at 5-6.) As just set out, this is beside the point: there is no basis in the record to know whether Plaintiff's course of treatment reflected the seriousness of her impairment or whether it reflected the lack of available non-conservative treatment options for her condition. If it is the latter, it has no bearing on whether Plaintiff's testimony about her symptoms should be credited. Without more, "conservative" treatment is not a basis to reject Plaintiff's testimony.

Finally, the ALJ noted that Plaintiff's activities of daily living were "not consistent with the alleged degree of impairment," as Plaintiff "reported being able to dress and bathe herself, and that she could drive, and has a hobby involving painting with water color." (AR 28 (citing AR 1361).)

An ALJ may discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree of disability alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"), *superseded by regulation on other grounds*. Even where a plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Id.* at 1113.

But the Ninth Circuit has cautioned that a claimant's ability to complete minimal daily activities does not detract from the claimant's credibility. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) ("evidence that [claimant]

11

1  could assist with some household chores was not determinative of disability.
2  'Disability does not mean that a claimant must vegetate in a dark room excluded
3  from all forms of human and social activity.'") (quoting *Smith v. Califano*, 637
4  F.2d 968, 971 (3d Cir. 1981)); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.
5  2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has
6  carried on certain daily activities, such as grocery shopping, driving a car, or
7  limited walking for exercise, does not in any way detract from her credibility as
8  to her overall disability."). That would seem to be particularly true where the
9  Plaintiff alleges her condition is episodic, not constant.

10 Here, some of Plaintiff's daily activities cited by the ALJ—independently
11 bathing, dressing, and driving—are ones the Ninth Circuit has cautioned
12 against using to discredit symptoms testimony. *Id.* Moreover, Plaintiff required
13 help with some of those daily activities, undermining the ALJ's assertion that
14 they reflected a higher degree of capacity than Plaintiff testified to. (AR 1361
15 (noting that Plaintiff's son reminded her to shower every day and that Plaintiff
16 did not go places by herself).) As Plaintiff's reported daily activities appear to be
17 minimal, they are not a proper basis for discounting Plaintiff's symptoms
18 testimony. *Vertigan*, 260 F.3d at 1050.

19 Defendant resists this conclusion, arguing that Plaintiff's daily activities
20 did not need to be commensurate with full-time work to show exaggeration of
21 symptoms or limitations. (Opp'n at 6-7.) The Court does not doubt that to be
22 true, in principle. At the same time, for a daily activity to undercut a claimant's
23 testimony, the activity must give rise to an inference that the claimant has
24 somehow exaggerated her symptoms. It is unclear how Plaintiff's ability to
25 bathe, dress, or drive undermines Plaintiff's testimony that her dizziness affects
26 her lifting and carrying capacity—particularly given her testimony that her
27 condition consists of episodes that last between a few hours and a few days. (AR
28 27, 47-48.) Defendant suggests that each of the activities required the ability to

balance. Setting aside that this was not the ALJ's reasoning,[5] the fact that Plaintiff can regularly bathe, dress, and drive during the course of a day or week simply does not undermine Plaintiff's testimony that she is prone to falls and unable to lift items when she is suffering an episode of vertigo.

Defendant also argues that any error in consideration of Plaintiff's daily activities would be harmless, as the ALJ provided additional valid reasons supported by the record. (Opp'n at 7.) But this Court has not found that any of the ALJ's reasons are valid and thus declines to find harmless error. The ALJ's decision is therefore reversed.

## IV. REMEDY

Remand (as opposed to an outright grant of benefits) is appropriate as the circumstances of this case suggest that further administrative proceedings could remedy the ALJ's errors. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler*, 775 F.3d at 1101, n.5 (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); *Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record").

Having found that remand is warranted, the Court declines to address Plaintiff's remaining argument regarding the ALJ's RFC finding, which also related to Plaintiff's claim concerning her vertigo. That question can be

---

[5] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.")

13

addressed, as necessary, on remand. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F.Supp.2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."); *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990) ("Because we remand for reconsideration of step three, we do not reach the other arguments raised.").

## V. CONCLUSION AND ORDER

For the reasons above, it is therefore ordered that: (1) Plaintiff's request for reverse and remand (ECF 13) is **granted**; (2) the decision of the Commissioner is **reversed** and this matter is **remanded** for further administrative proceedings consistent with this Opinion and Order; and (3) Judgment be entered in favor of Plaintiff.

DATED: October 15, 2025

_____
HON. BRIANNA FULLER MIRCHEFF
UNITED STATES MAGISTRATE JUDGE